UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRIS BERNAICHE,

    Plaintiff,

v.                                                Case No. 2:10-cv-250
                                                    HON. ROBERT HOLMES BELL

HARRIETT SQUIER, M.D., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Chris Bernaiche, an inmate currently confined at the Kinross Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Prison Health Services, Inc. (PHS), Dr. Harriett Squier, Michael Catalano and MDOC Chief Physician Dr. Jeffrey Stieve.[1] Plaintiff claims that he not being properly treated for his medical condition. Plaintiff suffers with discomfort in his anal/colon area. Plaintiff has a family history of prostate cancer. Tests provided have been negative and the treatment that plaintiff has received has not alleviated his symptoms. Dr. Piazza noted that plaintiff's prostate does not feel normal on examination and recommended that plaintiff receive an ultrasound. The ultrasound would have to be conducted by an off-site private urologist. Defendant Squier denied the request for a consultation with a urologist and told Dr. Piazza to stop all current medication and to prescribe Bactrim, have plaintiff increase ejaculation frequency, increase fiber and avoid rectal intercourse. Plaintiff complains that Defendant

---

[1] Named as Dr. Jeffrey Stevie in complaint.

Squier's advice is simply unprofessional because plaintiff is allergic to Bactrim and has not had anal sex in his life.

Plaintiff's mother telephoned MDOC Chief Medical Officer Dr. Stieve. Plaintiff complains that Dr. Stieve refused to intervene and order the recommended ultrasound. Dr. Stieve did inform plaintiff's mother that under MDOC policy, the consultation could occur if she agreed to pay for it. Plaintiff claims that Dr. Stieve violated his Eighth Amendment rights by denying the off-site visit with a urologist. Plaintiff requests injunctive relief and nominal, compensatory and punitive damages. Plaintiff also requests attorney fees.

On March 14, 2012, the court granted Defendant Stieve's motion for summary judgment (docket #34). Defendants Squier and PHS now move for summary judgment (docket #35). Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether

there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Squier and PHS seek summary judgment because the medical evidence shows that they did not act with deliberate indifference. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff claims that Defendants Squier and PHS improperly refused to refer him to a urologist and breached their duty to provide Plaintiff with adequate medical care. Plaintiff alleges that Defendant Squier refused to refer him to a urologist first in May of 2009, then in November of 2009, and finally in January of 2010. In support of the motion for summary judgment, Defendant Squier refers to Plaintiff's medical records. (Defendants' Exhibits B and D.) On January 16, 2009, Plaintiff complained of a urinary tract infection, as well as anal and prostate tenderness. It was also discovered that Plaintiff had a mass in his rectum. Plaintiff was scheduled to have an anoscopy on March 5, 2009, and a colonoscopy on April 7, 2009, both of which appeared normal. (Defendants' Exhibit D.)

Defendant Squier began working for the MDOC on April 1, 2009. (Defendants' Exhibit A, ¶ 2.) On May 6, 2009, Plaintiff complained that the medications were not helping with his prostate pain. On May 14, 2009, Dr. Piazza scheduled a test of Plaintiff's prostate secretions and ordered Vibramycin, Doxycycline Hyclate, Vicodin Es, Hydrocodone Bit/acetaminophen, Pyridium and Phenazopyridine Hcl. On June 24, 2009, Dr. Piazza requested a urology consultation, changed

Plaintiff's antibiotic, ordered Plaintiff to increase ejaculation frequency, add fiber to diet, take over-the-counter NSAIDs, and avoid rectal intercourse. (Defendants' Exhibit B, pp. 8-22.)

Defendant Squier attests that in response to the consultation request, she requested additional information regarding what antibiotics had been prescribed and the length of such treatments because her review of Plaintiff's record suggested that he may have been suffering from chronic prostatitis, which is appropriately treated with antibiotics. Upon receiving the requested information, Defendant Squier determined that Plaintiff was suffering from prostatitis and recommended an alternate treatment plan. Specifically, Defendant Squier recommended a more aggressive antibiotic treatment to eradicate any infection and that Plaintiff stop taking Vicodin because it caused urinary retention and constipation, which could worsen Plaintiff's condition. With regard to improving Plaintiff's comfort level, Defendant Squier recommended that Plaintiff stop his other medications, increase his ejaculation frequency, avoid rectal intercourse, increase his fiber intake, and use non-steroidal anti-inflammatory pain relievers as needed. (Defendants' Exhibit A, ¶¶ 9-10; Defendants' Exhibit B, pp. 16-21.)

On June 25, 2009, Dr. Piazza scheduled a post prostate massage urinalysis and urine culture. In a progress note by Defendant Stieve dated June 25, 2009, he noted that he had spoken to Plaintiff's mother, who demanded that Plaintiff be given an ultrasound. Defendant Stieve explained that there was an evidence based plan to address Plaintiff's complaints. After fifteen minutes on the phone, Defendant Stieve offered Plaintiff's mother the option of an elective speciality visit and/or procedure at her expense, but Plaintiff's mother stated that the State should just pay for it. Defendant Stieve also explained that prostatitis is notorious for requiring a relatively long course of treatment and that Plaintiff would continue to be reevaluated on a regular basis. (Defendants' Exhibit B, pp. 23-27.)

Plaintiff was continued on the alternative treatment plan through November of 2009, at which time he complained of prostate pain. Dr. Piazza submitted a request for a urology consultation. Defendant Squier requested additional cultures of prostatic secretions and noted that Plaintiff had not yet been on chronic, long-term treatment with appropriate medications. Defendant Squier directed that Plaintiff be given the antibiotic Levoquin at high levels for six weeks, with a reevaluation after the six-week treatment. (Defendants' Exhibit A, ¶¶ 12-13; Defendants' Exhibit B, pp. 28-37.) On November 20, 2009, Plaintiff was placed on the new antibiotic and Dr. Piazza noted that Plaintiff's test results showed no malignant cells, no atypia and no bacteria. On January 15, 2010, Plaintiff complained that his symptoms had not improved and Dr. Piazza resubmitted the request for a urology consultation. (Defendants' Exhibit A, ¶¶ 14-15; Defendants' Exhibit B, pp. 38-55.) Defendant Squier attests:

> In response, I recommended an alternative treatment plan because my evaluation of Mr. Bernaiche's medical records and his subjective complaints of pain continued to suggest that [he] suffered from, at most, prostatitis. To further evaluate [Plaintiff's] condition and the most appropriate treatment going forward, I recommended that possible reasons for his prior treatment failures should be assessed and considered, including whether [Plaintiff] had complied with the course of treatment, whether his condition may have been caused by an STD, and whether his condition had an infectious cause. I further noted that most patients require 12 weeks of aggressive antibiotic treatment to achieve full symptom relief. In accordance with my recommendation, [Plaintiff] was approved for a 12-week Floxin antibiotic treatment on January 26, 2010.

(Defendants' Exhibit A, ¶ 16.)

Plaintiff's complaints regarding his prostate pain and discomfort subsided following the prescribed 12-week Floxin treatment. When Plaintiff was seen by Dr. Christy L. Davis on November 4, 2010, he made no complaints regarding his prostate. Nor has Plaintiff made any such

complaints since that date. Defendant Squier attests that there were no further requests for a urology consultation. (Defendants' Exhibit A, ¶ 17; Defendants' Exhibit B, pp. 64-66.)

Defendant Squier attests that when a patient does not fully respond to a prescribed antibiotic, it is the standard of care to try a new course or combination of antibiotics. Defendant Squier states that each time a request for a urology consultation was made, she evaluated Plaintiff's medical records in order to determine the proper course of treatment. Based on her experience and medical judgment, Defendant Squier determined that Plaintiff was suffering from a low grade infection in his prostate and would benefit from aggressive treatment with antibiotics. Defendant Squier concludes that such treatment was ultimately successful in resolving Plaintiff's prostatitis. (Defendants' Exhibit A, ¶¶ 18-19.) In the opinion of the undersigned, the failure to refer Plaintiff to a urologist did not constitute an Eighth Amendment violation.

Defendant PHS asserts that it is entitled to summary judgment because Plaintiff cannot establish that a PHS policy, practice, or custom caused him injury.

> It is well accepted that Prison Health Services is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir.2005) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). To establish liability against Prison Health Services, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Prison Health Services policy, practice, or custom. *See Thomas,* 398 F.3d at 429.
>
> To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that Prison Health Services had notice or constructive notice of such; (3) that Prison Health Services tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in

>   the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir.1996)).

*McMurry v. Caruso*, 2012 WL 6650502, 11 -12 (W.D. Mich., Oct. 10, 2012).

As noted by Defendants, Plaintiff fails to identify a policy or practice which caused him injury. As set forth above, Plaintiff's medical records show that he received multiple antibiotic treatments for his prostatitis, which were ultimately successful in resolving the problem. Therefore, because Plaintiff's constitutional rights were not violated, Defendant PHS is entitled to summary judgment.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment filed by Defendants Squier and PHS. Accordingly, it is recommended that Defendants Squier's and PHS' motion for summary judgment (docket #35) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: February 8, 2013